LARRY ISAACS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Freeman United Coal Company, Appellees).

Fifth District (Industrial Commission Division)  No. 5—84—0760WC

Opinion filed August 21, 1985.—Rehearing denied November 25, 1985.

Serkland & Muelhausen, of Chicago (James C. Serkland, of counsel), for appellant.

Carter Harrison and Elmer Jenkins, both of Benton, for appellee Freeman United Coal Company.

JUSTICE BARRY delivered the opinion of the court:

The claimant, Larry Isaacs, filed a claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*), for injuries sustained while employed by the defendant, Freeman United Coal Mining Company (the company). The arbitrator awarded both temporary total and permanent partial disability benefits to the claimant. On review, the Illinois Industrial Commission (the Commission)

reduced the benefits awarded by the arbitrator. The circuit court of Franklin County confirmed the decision of the Commission. The claimant brings the instant appeal. We affirm in part and reverse in part.

The claimant had been employed by the company since 1970. On January 23, 1976, he injured his back while lifting a plate weighing approximately 100 pounds. This injury was the basis for the instant claim. The claimant had previously injured his back in 1973 and at that time had received 40 weeks' compensation for a 20% loss of use of his right leg.

The claimant's physician initially prescribed heat treatments, a back brace, and medication for the instant injury, and on May 11, 1976, the claimant returned to work. He was hospitalized in October 1976 and again in November 1976 for traction, heat treatments, and therapy. The claimant went back to work on January 29, 1979. A herniated disc was diagnosed in April 1979, and on May 21, 1979, a bilateral hemilaminectomy was performed. The claimant returned to work as a laborer on April 16, 1980.

At the arbitrator's hearing, it was established that the company operated $239\frac{2}{3}$ days in 1975, the year preceding the instant injury. The claimant's straight-time pay for the 52-week period prior to the accident was $11,157.22, and his hourly wage was $7.15 at the time of the injury. These earnings of the claimant during this 52-week period did not include payment for any wild-cat strikes, holidays, or 40 days of overtime on Saturdays and Sundays, but they did include two weeks for vacations. Of the $239\frac{2}{3}$ days that the company operated in 1975, the claimant worked 164 days at the straight time pay rate.

The arbitrator awarded benefits to the claimant for temporary total disability and for 30% permanent partial disability of the person. The arbitrator found that the claimant's average weekly wage was $295.69 based on an annual wage of $15,376.08. The arbitrator applied section 10(c) of the Act, stating that section 10(a) did not apply because the claimant was absent from work due to unavoidable cause in the year before the injury. The claimant was awarded $191.13 per week for $58\frac{4}{7}$ weeks for the temporary total disability. Additional benefits of $197.13 per week for 150 weeks were awarded by the arbitrator for the 30% permanent partial disability of the person.

The Commission established the claimant's average weekly wage at $214.56 based upon his straight time annual wage of $11,157.22 divided by 52 weeks. Although the record does not state which rate provision of section 10 of the Act was applied, the Commission apparently utilized section 10(a). On this basis, the Commission awarded temporary disability benefits of $143.04 per week for $58\frac{4}{7}$ weeks. The

Commission also granted 22% partial disability benefits of $143.04 per week for 110 weeks, finding that Freeman was entitled to an 8% credit for the prior 1973 injury.

On appeal to the circuit court of Franklin County, the court confirmed the Commission's decision. This appeal followed.

The claimant argues on appeal that his average weekly wage should be determined by dividing his annual earnings by the number of weeks during which work was available and during which he was not unavoidably absent. The claimant thus contends that his annual earnings of $11,157.22 should be divided by 40, the number of weeks that work was available. This number of weeks is computed by the claimant based on the fact that the mine operated 239⅔ days in the year before the injury. After deducting his 40 days of overtime earnings, the claimant asserts that only 199⅔ day or 40 weeks of regular work were actually available to him. The claimant asks, therefore, that his average weekly earnings be calculated on the basis of 40 weeks rather than 52 weeks.

We find initially that the arbitrator's basis was improperly computed. The arbitrator based his determination of the claimant's average weekly wage on the assumption that the claimant worked a total of 275 days in the year next preceding the injury. The record states, however, that the claimant worked 164 straight time days and 40 days of overtime on Saturdays and Sundays.

Section 10 of the Act contains the following relevant provisions for computing an employee's level of compensation:

> "(a) The compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.
>
> (b) Employment by the same employer shall be taken to mean employment by the same employer in the grade in which the employee was employed at the time of the accident, uninterrupted by absence from work due to illness or any other unavoidable cause." (Ill. Rev. Stat. 1975, ch. 48, pars. 138.10(a), (b).)

Other rate provisions are contained in subsections 10(c), (d), and (e) of the Act, but it is well accepted that annual earnings must be determined, if possible, under paragraph (a). (*Vaught v. Industrial Com.* (1972), 52 Ill. 2d 158, 287 N.E.2d 701.) Under section 10(i) of the Act, the earnings per annum are to be divided by the number of installment periods per annum in order to determine the amount of compensation for each installment period. Ill. Rev. Stat. 1975, ch. 48, par. 138.10(i).

The claimant bases his argument for the use of 40 weeks on *Monterey Coal Co. v. Industrial Com.* (1980), 79 Ill. 2d 334, 403 N.E.2d 263. There the court held that an employee's absence due to a strike should not be included in the computation of the employee's average weekly earnings. The facts of *Monterey*, however, are not applicable to the instant case. In the case at bar, the record contains insufficient evidence to determine the extent of any periods of strikes or absences due to unavoidable causes. We note further that the claimant's annual straight time earnings of $11,157.22 properly excluded payment for wild-cat strikes, holidays, and overtime. The instant record, therefore, fails to indicate any basis for a deduction of days because of absences due to unavoidable causes.

■ We find in the case before us that section 10(a) is applicable to the calculation of the claimant's average weekly earnings and that the Commission properly based this computation on 52 weeks. The record clearly indicates that the claimant was continuously employed by the company during the year next preceding the injury. All of the claimant's straight time earnings for that year were taken into consideration in determining his actual wages, and the claimant's employment did not constitute temporary or seasonal work. The record, furthermore, does not reveal any unusual circumstances regarding absences from work due to unavoidable causes. The findings of the Commission as to the claimant's average weekly earnings are, therefore, not against the manifest weight of the evidence.

■ The claimant next contends that the Commission improperly deducted an 8% credit from the 30% permanent disability award. The disputed 8% credit was allowed for the claimant's 1973 back injury which resulted in a 20% loss of use of his right leg. The claimant asserts that the Commission's extrapolation of this prior injury to an 8% disability of the person was contrary to the provisions of the Act.

The critical question in the case at bar is whether the Commission could properly allow a credit for a previous back injury by extrapolating this prior injury, a 20% loss of use of a leg under section 8(e), into an 8% disability to the person under section 8(d)(2). The Commission based this extrapolation on the premise that both an 8% disability to the person and a 20% loss of use of a leg equal 40 weeks of compensation. Forty weeks were then deducted from the arbitrator's award of 150 weeks. The Commission thus awarded the claimant compensation for 110 weeks.

Section 8(e)(17) of the Act provides for credit to the employer for a prior injury under some circumstances:

"In computing the compensation to be paid to an employee

who, before the accident for which he claims compensation, had before that time sustained an injury resulting in the loss *** of any member, including hand, arm, thumb or fingers, leg, foot or any toes, such loss or partial loss of any such member shall be deducted from any award made for the subsequent injury. For the permanent loss of use or the permanent partial loss of use of any such member or the partial loss of sight of an eye, for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury." Ill. Rev. Stat. 1975, ch. 48, par. 138.8(e)(17).

Section 8(d)(2) of the Act concerns disability to the person. It provides that compensation awarded for disability to the person should not take into consideration injuries covered under section 8(e) and, furthermore, should not affect the employee's right to compensation payable under section 8(e). Ill. Rev. Stat. 1975, ch. 48, par. 138.8(d)(2).

It is well established that in construing statutes, the courts are free to interpret the language used by the legislature only where it requires interpretation, and not to annex new provisions or substitute different ones, or read into a statute exceptions, limitations, or conditions which depart from its plain meaning. Credits which operate as partial exceptions to the liabilities created by the Act should, therefore, be narrowly construed where granted and not be extended by implication unless necessary to accomplish the purpose of the Act. *Freeman United Coal Mining Co. v. Industrial Com.* (1984), 99 Ill. 2d 487, 459 N.E.2d 1368.

In support of the instant 8% credit, the company relies on *General Motors Corp., Fisher Body Division v. Industrial Com.* (1975), 62 Ill. 2d 106, 338 N.E.2d 561. The factual situation in *General Motors*, however, is distinguishable. There, both injuries to the employee involved the same bodily member. In the instant case, although both injuries to the claimant involved his back, the claimant's prior injury resulted in compensation for the partial loss of use of his right leg.

A fact situation more applicable to the case before us was presented in *Page Enterprises, Inc. v. Industrial Com.* (1980), 78 Ill. 2d 287, 399 N.E.2d 1312. There the claimant had sustained a prior back injury, and then sustained a subsequent injury to his right leg which resulted in a 65% permanent loss of use of the leg. The court denied credit for the prior injury because it did not involve the same "member," as is required for credit under section 8(e)(17).

We find in the case at bar that the Commission's allowance of an 8% credit for the claimant's prior injury was improper. Although both

of the injuries involved the claimant's back, the prior award was for a "member" disability. In crediting the prior award, the Commission disregarded the statutory direction of section 8(d)(2) that compensation for disability to the person shall not take into consideration injuries classified as member disabilities. In deducting the prior 20% loss of use of the claimant's leg, the Commission improperly took into consideration a member disability and, as a result, affected the claimant's right to compensation for disability to the person. We conclude, therefore, that the claimant is entitled to receive compensation benefits for 30% permanent partial disability of the person.

Accordingly, the judgment of the circuit court of Franklin County is affirmed as to the computation of the claimant's average weekly earnings. The judgment of the circuit court is reversed as to the allowance of the credit for the prior injury.

Affirmed in part; reversed in part.

WEBBER, P.J., and McNAMARA, LINDBERG and KASSERMAN, JJ., concur.